**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 13, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOSE MIGUEL PACHECO,

Defendant - Appellant.

No. 22-7062
(D.C. No. 6:19-CR-00073-RAW-2)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT***
_____

Before **TYMKOVICH**, **BALDOCK**, and **ROSSMAN**, Circuit Judges.
_____

Defendant Jose Miguel Pacheco is one of twenty-nine defendants charged with conspiring to distribute narcotics in a large-scale trafficking organization run by his cousin, Enrique Pacheco. Defendant pleaded guilty to one count of possession with intent to distribute methamphetamine in exchange for dismissal of the remaining charges against him. At sentencing, the district court relied on Defendant's coconspirators' statements in formal interviews with law enforcement to increase Defendant's drug quantity. The district

---

* After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

court further applied a four-level upward adjustment pursuant to U.S.S.G. § 3B1.1(a) for Defendant's role as an organizer/leader in the conspiracy. The district court sentenced Defendant to a 274-month, within-Guidelines imprisonment sentence. On appeal, Defendant challenges the district court's calculation of his drug quantity, the enhancement, and the substantive reasonableness of his sentence. Exercising jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we affirm.

## I.

In September 2019, a federal grand jury returned a twenty-five-count indictment charging twenty-nine defendants with conspiracy to distribute methamphetamine and heroin, among other charges, in the Eastern District of Oklahoma. Defendant was named in seven counts. The Government alleged that Enrique Pacheco, Defendant's cousin, operated a large-scale drug trafficking organization from his cell in the Oklahoma State Penitentiary while serving a life sentence for first-degree murder. Enrique Pacheco used a contraband cell phone to communicate with drug suppliers in Mexico, his distribution network, and family members involved in the operation. The Government identified Defendant as a distributor of Enrique Pacheco's methamphetamine in Muskogee, Oklahoma. In July 2021, Defendant pleaded guilty without a plea agreement to Count Five of the indictment, possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C). In exchange, the Government dismissed the remaining six counts against Defendant.

The Government's primary evidence against Defendant comes from three traffic stops and a series of interviews with his coconspirators. First, in September 2018,

Muskogee police attempted to stop Defendant for a traffic violation. Defendant led police on a short pursuit before pulling over. Police arrested him and recovered 1.92 grams of heroin, 28.25 grams of methamphetamine, and $1,150 cash. In November 2018, Defendant led Fort Gibson Police on a 100-mile-per-hour high speed pursuit. Defendant eventually drove through a fence and into a pasture where he was forced to stop. He fled on foot while police interrogated his female passenger, Krystal Mayen. She identified Defendant as the driver. Police retraced Defendant's flight path and discovered that he discarded 152.35 grams of methamphetamine, 7.38 grams of heroin, 13.71 grams of cocaine, .3 grams of marijuana, 97 Xanax tablets, and 5 Oxycodone tablets. This arrest formed the factual basis for Count Five of the indictment, to which Defendant pleaded guilty. Finally, in April 2019, Defendant led Muskogee police on a third pursuit, this time driving through two police roadblocks. Defendant and his seventeen-year-old passenger Lannie Jo Carter discarded multiple bags out of the car's windows as they drove. Defendant eventually stopped in a field and police forcibly detained him. Officers recovered $772 cash, a Mossberg rifle with ammunition, and 8.54 grams of heroin. Carter later told police they discarded four firearms during the pursuit. Carter also said Defendant instructed her to tell police the Mossberg rifle belonged to her.

3

Defendant's coconspirators provided information about his alleged role in the drug trafficking organization in formal interviews with the Government. At sentencing, the Government used information from the interviews to estimate the drug quantities Defendant was responsible for distributing:

- Codefendant Krystal Mayen told investigators she traveled to Oklahoma City with Defendant on five separate occasions for Defendant to purchase methamphetamine from suppliers at the direction of Enrique Pacheco. Mayen also disclosed that she purchased methamphetamine for Defendant from the same suppliers.

- Codefendant Lannie Jo Carter advised she worked with the organization beginning in November 2018. She told investigators she went with Defendant to pick up methamphetamine in Oklahoma City three to four times per week from suppliers named "Primo" and "Tony." She advised Defendant bought one pound to multi-pound quantities each time and redistributed it in ounce to multi-ounce quantities to his own and Enrique Pacheco's customers. The Government attributed 48 ounces of methamphetamine to Defendant based on his purchases in Oklahoma City with Carter.

- Codefendant Shaina Johnson, Mayen's stepsister, corroborated Mayen and Carter's statements that Defendant always purchased multi-pound amounts of methamphetamine from suppliers. Johnson also admitted to working for Enrique Pacheco.

- Jordan Brown, Enrique Pacheco's former brother-in-law, told investigators he used to distribute methamphetamine for Enrique Pacheco. Brown advised he began purchasing one-ounce quantities of methamphetamine from Defendant in early 2018 while completing a six-month drug rehab program. After rehab, Brown bought three to four ounces per day from Defendant until Brown's arrest in October 2018. When Brown was released from jail in November 2018, he received three to four half-pounds of methamphetamine from Defendant. The Government attributed 193 ounces of methamphetamine to Defendant based on these distributions to Brown.

- Codefendant Feather Pacheco, Jordan Brown's girlfriend, corroborated Brown's statements. She told investigators they traveled to Muskogee two to three times per week in 2018 to pick up between 4 and 24 ounces of methamphetamine from Defendant. She recalled purchasing 16 ounces on

three specific occasions.    The Government attributed 76 ounces of methamphetamine to Defendant based on these distributions.

- Codefendant Tabitha Bryant told investigators she bought one ounce of methamphetamine from Defendant four to five times in 2019.    The Government attributed four ounces of methamphetamine to Defendant.

The United States Probation Office ("USPO") prepared a Presentence Investigation Report ("PSR") before Defendant's sentencing.  The USPO determined that Defendant's three arrests and all activities in furtherance of the distribution conspiracy—including the acts described by his coconspirators—were relevant conduct to his offense of conviction under U.S.S.G. § 1B1.3(a).  As such, the USPO added the drugs Defendant possessed during each arrest to the estimated amounts of methamphetamine attributed to him from the conspiracy to reach a total converted drug weight of 18,593.84 kilograms attributable to Defendant.  This equates to a base offense level of 34.  Relevant here, the USPO also recommended a four-level upward adjustment pursuant to U.S.S.G. § 3B1.1(a) for Defendant's role as an organizer or leader in the conspiracy.  Defendant filed a written objection to the PSR challenging the inclusion of the uncharged drug amounts and the organizer/leader enhancement.  Defendant argued his coconspirators' statements were unreliable, uncorroborated by physical evidence, and therefore should not be used to increase his drug quantity.  He maintained his drug quantity should only reflect the amount he physically possessed during his arrests, which he argues would lower his base offense level to 32.

The district court held a sentencing hearing in November 2022.  The district court denied all of Defendant's objections to the PSR.  First, the court found by a preponderance

of the evidence "that the multiple statements of coconspirators in this matter are corroborative of one another and provide indicia of reliability."[1] R. Vol. III at 44. Next, the court found that the coconspirators' statements described conduct relevant to Defendant's offense of conviction. Accordingly, the court adopted the drug quantity recommendation in the PSR, concluding that "the drug quantities identified were conservatively estimated and accurately included." *Id*. Second, the court overruled Defendant's objection to the organizer/leader enhancement, finding by a preponderance of the evidence that Defendant directed at least two codefendants in a drug distribution organization with more than five participants. Finally, the court denied Defendant's motion for a downward variance and sentenced him to a within-Guidelines sentence of 274 months of imprisonment.

Defendant appeals his sentence on three grounds. Defendant argues the district court committed two procedural errors: relying on the coconspirator statements to increase his drug quantity; and applying the § 3B1.1(a) organizer/leader sentencing enhancement. Defendant also argues his 274-month-sentence is substantively unreasonable in length. We disagree and affirm Defendant's sentence.

---

[1] We note the Government introduced at sentencing ten exhibits containing reports of the coconspirators' formal interviews. The Government did not include these exhibits in the record on appeal, but the district court considered them in making its reliability determination.

## II.

"We review sentences for reasonableness under a deferential abuse of discretion standard." *United States v. Haley*, 529 F.3d 1308, 1311 (10th Cir. 2008) (citation omitted). "Our review includes both procedural reasonableness, which encompasses the manner in which a sentence was calculated, and substantive reasonableness, which concerns the length of the sentence." *United States v. Caiba-Antele*, 705 F.3d 1162, 1165 (10th Cir. 2012) (citation omitted). A sentence is procedurally unreasonable if the district court incorrectly calculates the Guidelines range or relies on clearly erroneous facts. *Haley*, 529 F.3d at 1311. A sentence is substantively unreasonable if its length is unreasonable "given the totality of the circumstances in light of the 18 U.S.C. § 3553(a) factors. *Id*. (citation omitted).

## A.

Defendant first argues the district court procedurally erred in calculating his base offense level by relying on his coconspirators' statements to increase his drug quantity. When a defendant is convicted of possession with intent to distribute, his sentencing range—and, more specifically, his base offense level—depends on the underlying drug quantity. *See* 21 U.S.C. § 841(b). The government has the burden of proving drug quantity by a preponderance of the evidence. *United States v. Ruiz-Castro*, 92 F.3d 1519, 1534 (10th Cir. 1996). We review factual findings regarding drug quantities for clear error and reverse "only if the district court's finding was without factual support in the record or we are left with the definite and firm conviction that a mistake has been made." *United States v. Dalton*, 409 F.3d 1247, 1251 (10th Cir. 2005) (citation omitted). When the physical

drugs underlying a drug quantity determination are not seized, the district court may rely upon an estimate to establish the defendant's base offense level "so long as the information relied upon has some basis of support in the facts of the particular case and *bears sufficient indicia of reliability*." *Id*. at 1251. (emphasis added) (citation omitted). This includes information about drug quantity contained in hearsay statements. *Untied States v. Ruby*, 706 F.3d 1221, 1227 (10th Cir. 2013).

Upon review of the record, we conclude the district court did not clearly err in relying upon Defendant's coconspirators' statements to estimate Defendant's drug quantity. The district court found that the multiple coconspirators' independent statements to law enforcement contained sufficient indicia of reliability because they were consistent and corroborated one another. Indeed, there are many details about Defendant's distribution activities that were corroborated by more than one coconspirator: Krystal Mayen and Lannie Carter both told investigators Defendant sold methamphetamine to Jordan Brown, which Brown confirmed; Mayen, Carter, and Shaina Johnson all reported that Mayen and Johnson "took care" of the methamphetamine Defendant stored at his apartment; Mayen and Carter both knew Defendant paid Enrique Pacheco for methamphetamine using "Green Dot" prepaid debit cards; and the statements of Mayen, Carter, Johnson, Brown, Feather Pacheco, and Tabitha Bryant all suggested Defendant purchased methamphetamine from suppliers in at least one-pound quantities and redistributed it to buyers in one-ounce or greater amounts.

Furthermore, the coconspirator statements contain other indicia of reliability not explicitly relied upon by the district court. Contrary to Defendant's assertion, there is

corroborating evidence. The Government represents that wiretap evidence substantiates Carter's statement that individuals named "Primo" and "Tony" supplied methamphetamine to Defendant.[2] Then there is the physical evidence recovered from Defendant's arrests. In September 2018, officers found on Defendant's person one plastic bag containing approximately one ounce of methamphetamine. In November 2018, they recovered four plastic bags containing approximately five total ounces of methamphetamine from Defendant. Defendant's possession of multiple bags containing one ounce or more of methamphetamine is consistent with Mayen and Carter's statements that Defendant redistributed methamphetamine in at least one-ounce quantities. Finally, we note each coconspirator implicated him or herself in criminal liability. Bryant, Brown, and Feather Pacheco admitted to purchasing multiple ounces of methamphetamine from Defendant, and Mayen, Carter, Johnson, Brown, and Pacheco all admitted to distributing drugs with or for Enrique Pacheco or Defendant. *Cf. United States v. Garcia*, 78 F.3d 1457, 1467 (10th Cir. 1996) ("[t]he fact that [an informant] testified regarding conduct that could incriminate him in further criminal liability also enhances the reliability of his statements"). Considering the consistency between the six coconspirators' statements, the corroborating evidence, and their self-inculpatory nature, we conclude the district court did not clearly err in relying upon relying upon the coconspirator statements to calculate Defendant's drug quantity.

---

[2] Defendant-Appellant did not file a reply brief responding to this point. Although the specific statements the Government references are not in the record, the PSR shows a United States District Judge approved a police wiretap of Enrique Pacheco's phone on July 11, 2019. R. Vol. II at 85.

**B.**

Defendant next argues the district court procedurally erred in applying the four-level organizer/leader enhancement under U.S.S.G. § 3B1.1(a). Section 3B1.1(a) provides: "If the Defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." The application notes provide guidance for identifying who qualifies as an organizer or leader:

> Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 cmt. n. 4. A defendant need only organize or lead one other participant to qualify for the enhancement. *United States v. Damato*, 672 F.3d 832, 847 (10th Cir. 2012); *see also* U.S.S.G. § 3B1.1 cmt. n. 1 ("A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted").

The district court found that Defendant was part of Enrique Pacheco's large-scale drug distribution organization involving more than five participants. The district court also made several specific factual findings that Defendant organized or led at least one participant:

> Information identified in the offense conduct section of the presentence report indicates that, at minimum, the defendant directed two codefendants with regard to obtaining and distributing controlled substances and drug proceeds; directed another codefendant to claim ownership of a firearm that he was given as payment for methamphetamine when he was arrested and in possession of that firearm; served as a principal supplier of controlled substances to other dealers for further distribution; and exercised decision-making authority with regard to where controlled substances were being stored.

10

R. Vol. III at 46. Defendant does not dispute the district court's factual findings. Rather, he argues they do not relate to his offense of conviction, possession with intent to distribute, which involved only two participants.[3]

Defendant's argument is foreclosed by our precedent and the Guidelines' plain language. In determining whether § 3B1.1 applies, the district court must consider "all relevant conduct, rather than . . . acts cited in the counts of conviction alone." *United States v. Hunsaker*, 65 F.4th 1223, 1227 (10th Cir. 2023) (citing § 3B1.1 intro. cmt. ("The determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct), i.e., all conduct included under § 1B1.3(a)(1)-(4), and not solely on the basis of elements and acts cited in the count of conviction.")). Defendant does not dispute the district court's finding that his activities related to the distribution conspiracy with Enrique Pacheco's organization were relevant conduct, or that the organization had more than five participants. Accordingly, the district court did not err in applying § 3B1.1.

## III.

Lastly, Defendant argues his 274-month, within-Guidelines sentence was substantively unreasonable. We disagree. "A sentence is only substantively unreasonable if it exceeds the bounds of permissible choice, given the facts and the applicable law."

---

[3] The Government argues Defendant changed his theory on appeal and his argument should therefore be subject to plain error review. We need not decide whether Defendant's objection was preserved because his argument fails even under less-scrutinous abuse of discretion review.

*United States v. Woody*, 45 F.4th 1166, 1180 (10th Cir. 2022) (internal quotation omitted).

Moreover, we presume a sentence is reasonable if it is within the properly calculated

Guidelines range. *Id*. Defendant failed to rebut this presumption.

Defendant argues the district court gave too little weight to his mitigating

characteristics and invites us to reweigh the 18 U.S.C. § 3553(a) sentencing factors. But

the district court thoroughly weighed the § 3553(a) factors and explicitly considered

Defendant's family dynamics, upbringing, early exposure to drugs, lengthy substance

abuse history, and criminal history in arriving at a sentence below the median of his 262-

327-month Guidelines imprisonment range. We decline to reweigh the § 3553(a) factors

because doing so "is beyond the ambit of our review." *United States v. Lawless*, 979 F.3d

849, 856 (10th Cir. 2020). Accordingly, Defendant failed to show his sentence was

substantively unreasonable.

**\*\*\***

We conclude Defendant's sentence is procedurally and substantively reasonable and

therefore **AFFIRM** the district court's imposition of sentence.

Entered for the Court

Bobby R. Baldock
Circuit Judge